NO. 07-00-0406-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

NOVEMBER 9, 2001

_____

MARSHALL DUBREE, INDIVIDUALLY
AND AS INDEPENDENT EXECUTOR OF
THE ESTATE OF LILLIE DUBREE, APPELLANT

V.

EDWARD BLACKWELL, APPELLEE
_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 99-505,327; HONORABLE CECIL G. PURYEAR, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

Appellant Marshall Dubree (Marshall), Individually and as Independent Executor of the Estate of Lillie Dubree, appeals from a take-nothing judgment in his suit to set aside a deed and bank account signature cards which were executed by Lillie Dubree before her death. Marshall claims that Lillie was not competent when the documents were executed and that appellee Edward Blackwell (Edward) unduly influenced Lillie to execute the

documents. By four issues Marshall urges that jury findings adverse to his claims were not supported by factually sufficient evidence. We affirm.

## I. BACKGROUND

Edward was a lifelong friend of Lillie Dubree and was married to Lillie's sister. Lillie's sister died in 1988. After the death of her sister, Lillie invited Edward to move to Lubbock, Texas, where Lillie lived. Edward did so, purchased a house in Lubbock and put it in Lillie's name. Edward and Lillie both resided in the house. Both Edward and Lillie had health problems associated with their advancing ages. Edward cared for Lillie until he became physically unable to do so. Lillie's declining health and Edward's physical inability to care for her culminated in Lillie being placed in a nursing home in October, 1997. On June 9, 1998, Lillie deeded her house to Edward. On July 14, 1998, Lillie executed new signature cards to her account in the American State Bank in Lubbock. The new signature cards changed the account to a joint account with Edward, with the right of survivorship.

Lillie died testate in December, 1998. Marshall, Lillie's nephew, was named in her will as independent executor and as sole beneficiary of her estate. Marshall filed suit to set aside the deed and bank account signature cards Lillie executed in 1998. Marshall claimed that when the documents were executed Lillie did not have capacity to execute the documents, and she was acting under the undue influence of Edward.

2

The case was tried to a jury. By its answers to jury questions one and four,[1] the jury found that (1) on June 9, 1998, the date that she conveyed her house to Edward, Lillie had sufficient mind and memory to understand the nature and consequences of her acts and the business she was transacting; and (2) on July 14, 1998, when she signed a joint and survivorship [sic] account card, Lillie had sufficient mind and memory to understand the nature and consequences of her acts and the business she was transacting. By its answers to jury questions two and five, the jury failed to find that (3) on June 9, 1998, the date that she conveyed her house to Edward, Lillie was under the undue influence of Edward; and (4) on July 14, 1998, when she signed a joint and survivorship [sic] account card, Lillie was under the undue influence of Edward. The trial court entered a take-nothing judgment and denied Marshall's motion for new trial.

By four issues[2] Marshall challenges the factual sufficiency of the jury findings. His issues one, two, four and five, respectively, urge that the jury's findings in response to questions one, two, four and five are against the great weight and preponderance of the evidence and are manifestly unjust.

## II. LAW

---

[1]Neither party objected to the jury charge as submitted, and the charge is not challenged on appeal. When no objection is made to the jury charge, evidence to support findings based on the questions and instructions should be assessed in light of the charge given, even if the charge is not entirely correct. See City of Fort Worth v. Zimlich, 29 S.W.3d 62, 71 (Tex. 2000).

[2]Marshall numbers his issues as one, two, four and five. To avoid confusion we will address the issues as numbered by Marshall. Thus, we will not address issue three; there is not an issue three.

3

## A. Standard of Review

If a finding is challenged for factual sufficiency of the evidence, all of the evidence is reviewed, Lofton v. Texas Brine Corp., 720 S.W.2d 804, 805 (Tex. 1986), both favorable and contrary to the findings. In re King's Estate, 150 Tex. 662, 664-65, 244 S.W.2d 660, 661 (1951). We reverse on the basis of factual insufficiency only if the verdict is so against the great weight and preponderance of the evidence that it is manifestly erroneous or unjust. Id. If we sustain a factual insufficiency issue, we reverse and remand for a new trial. Id.

In making our determination as to factual sufficiency assertions, we do not reweigh the evidence and set the verdict aside merely because we feel that a different result is more reasonable. Pool v. Ford Motor Co., 715 S.W.2d 629, 634 (Tex. 1986). The factfinder, whether jury or trial court in a bench trial, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547, 549 (1962). The factfinder may believe one witness and disbelieve another. McGalliard v. Kuhlman, 722 S.W.2d 694, 697 (Tex. 1986). The factfinder resolves inconsistencies in testimony. Id. Where enough evidence is before the factfinder that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn from the evidence, we may not substitute our judgment for that of the factfinder. Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988). When the jury did not find a fact based upon a preponderance of the evidence, we may

not reverse merely because we conclude that the evidence preponderates toward an affirmative answer. Id.

## B. Incompetency and Undue Influence

Absent proof and determination of mental incapacity, a person who signs a document is presumed to have read and understood the document. See Reyes v. Storage & Processors, Inc., 995 S.W.2d 722, 725 (Tex.App.--San Antonio 1999, pet. denied). Elderly persons are not presumptively incompetent. Edward D. Jones & Co. v. Fletcher, 975 S.W.2d 539, 545 (Tex. 1998). A person may be incompetent at one time but competent at another time. See Hefley v. State, 480 S.W.2d 810 (Tex.Civ.App.--Fort Worth 1972, no writ). The rights of incompetents are generally protected by rules that in some circumstances void transactions in which they are involved, and by the availability of guardianships. See Fletcher, 975 S.W.2d at 544-45; RESTATEMENT (SECOND) OF CONTRACTS § 15 (1981).

In deciding whether undue influence resulted in execution of a document, three factors are to be considered: (1) the existence and exertion of an influence; (2) whether the influence operated to subvert or overpower the grantor's mind when the deed was executed; and (3) whether the grantor would not have executed the deed but for the influence. Dulak v. Dulak, 513 S.W.2d 205, 209 (Tex.1974).

## III. ANALYSIS

A. Lillie's Competency[3]

Both the deed in question and the signature card to the American State Bank account were presented to Lillie Dubree by persons who did not testify at trial. Edward testified that the deed by which Lillie transferred the house to him was presented to Lillie by a realtor. The deed was notarized. A representative of American State Bank presented the account signature card by which Lillie designated the bank account as a joint account with the right of survivorship. No witness testified as to Lillie's mental condition at the very time she actually signed either the deed to the house or the bank signature card.

Evidence before the jury was conflicting as to whether Lillie was competent during the time frame in which the documents were executed, but no evidence was adduced as to Lillie's mental condition at the specific times she executed the documents. Two expert witnesses testified that Lillie had diminished mental capacity in general; one of the experts testified that persons could generally have diminished mental capacity but have periods of lucidity and understanding; Edward testified that Lillie was coherent and mentally capable to handle her affairs during his bi-weekly personal visits with her; Marshall opined that based on his personal experiences with her, Lillie was not mentally competent to handle her business. Marshall urges that the testimony of the expert witnesses and Marshall overcome the presumption that Lillie was competent to execute the documents

---

[3]Edward does not challenge the jury charge for failing to submit questions as to Lillie's state of mind at the time she actually executed the deed and bank account signature card, either as to Marshall's allegations of incompetency or undue influence.

6

and the testimony of Edward that Lillie was competent to manage her affairs. We disagree.

The jury was able to observe the witnesses and determine the weight to be given their testimony. Expert witness opinion testimony as to the competency of a person is not conclusive as to competency, and must be evaluated by a jury along with the other evidence presented. See Gregory v. Texas Employers Ins. Ass'n, 530 S.W.2d 105, 107 (Tex.1975) (while the expert witness's testimony must be taken as true insofar as it establishes facts, the opinions of the expert as to deductions from those facts is never binding on the trier of facts, even though not contradicted by an opposing expert). Moreover, as we have previously noted, no witness testified as to Lillie's mental condition at the very time she executed either the deed or the bank account signature card. According to one of Marshall's expert witnesses, persons can generally have diminished mental capacity or dementia and yet have "lucid, clear moments." Assuming, *arguendo*, that the testimony as to Lillie's general mental state around the time she signed the deed and bank account signature card would have been sufficient for the jury to find that she did not have sufficient mind and memory to understand the nature and consequences of her acts and the business she was transacting, the evidence was not such that the jury's finding otherwise was so against the great weight and preponderance of the evidence that it is manifestly unjust. See Herbert, 754 S.W.2d at 144. We overrule appellant's first and fourth issues.

## B. Undue influence

As we have previously noted, Edward was not present when Lillie executed either the deed or the bank account signature card. The documents were presented to Lillie by third parties not related to or alleged to have been under the control of Edward. Edward testified without contradiction that he was unaware that Lillie was going to sign a bank account card changing her American State Bank account to a joint account with the right of survivorship. Edward testified that he merely asked Lillie to deed the house to him so he could sell it to pay her medical bills, if necessary. There was no evidence that Edward exerted any influence on Lillie to sign the deed, other than making a suggestion that she sign the deed. Dr. Richard Wall, a psychologist who testified for Marshall, opined that Lillie was in such a general mental condition that she would have been susceptible to suggestions from persons she trusted.

The trial court defined "undue influence" as

> . . . such dominion and control exercised over the mind of the person executing the document, under the facts and circumstances then existing, as to overcome [Lillie's] free will. In effect the will of the party exercising undue influence was substituted for that of the party signing the document, preventing her from exercising her own discretion and causing her to do what she would not have done, but for such dominion and control.

The jury failed to find that Lillie was under the undue influence of Edward on either the day she executed the deed or the day she signed the card changing her bank account to a joint account with the right of survivorship. As in his claims that Lillie was not competent to execute the documents, Marshall does not refer us to evidence of Lillie's mental condition at the specific times she executed the documents. An expert witness testified that Lillie

8

was generally susceptible to suggestions of persons she trusted; Edward testified that Lillie was independent and made her own decisions based on observations he made during his bi-weekly personal visits with her. The evidence does not address the discussions which logically must have occurred between Lillie and the realtor and bank representative who actually presented the documents for Lillie to sign.

The jury was to judge the credibility of the witnesses and determine the weight to give their testimony, including that of Marshall's expert, in light of all the evidence. See Gregory, 530 S.W.2d at 107. Assuming, *arguendo*, that the expert testimony and other evidence would have been sufficient for the jury to find that Lillie was unduly influenced by Edward so that in signing the deed her free will and discretion were replaced by that of Edward, and that she would not have signed the deed absent Edward's dominion and control, our review of all the evidence does not lead us to conclude that the jury's failure to so find was so against the great weight and preponderance of the evidence that it is manifestly unjust. See Herbert, 754 S.W.2d at 144. We reach the same conclusion as to Lillie's signing of the signature card changing her American State Bank account. Only as to the bank account, Marshall refers us to no evidence that Edward ever even discussed the subject with Lillie, or in any way exerted influence on her to change the status of her account. Accordingly, we overrule Marshall's second and fifth issues.

## IV. CONCLUSION

Having overruled all of appellant's issues, we affirm the judgment of the trial court.

9

Phil Johnson
Justice


Publish.