**R. Daryll BENNETT, Appellant,**

v.

**Alberta MILLER and J. Paul Nelson, Appellees.**

No. 06–03–00138–CV.

Court of Appeals of Texas, Texarkana.

Submitted April 19, 2004.

Decided June 8, 2004.

Kathryn B. Moon, Bennett Law Office, Longview, for appellant.

J. Paul Nelson, Attorney At Law, Henderson, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

1. Hobert Stanley Miller was referred to in a hearing at the trial court level as "Stanley." We will, therefore, refer to him as "Stanley" in this opinion.

## OPINION

Opinion by Justice ROSS.

R. Daryll Bennett appeals from a summary judgment rendered against him in a declaratory judgment action. Bennett, an attorney, and J. Paul Nelson, also an attorney, both obtained contingency fee contracts for the same car accident. Nelson's was first in time and was signed by Alberta Miller, the injured party. Bennett's was second in time and was signed by Hobert Stanley Miller,[1] temporary guardian for Alberta. Both sides filed motions for declaratory judgment and then filed motions for summary judgment. The trial court found Nelson's contract valid and enforceable. Nelson's contract, signed by Alberta, is dated July 20, 2002. Bennett's contract, signed by Stanley, is dated August 20, 2002, one day after Stanley's appointment as temporary guardian. The temporary guardianship ended in December 2002.

The trial court granted Nelson's motion for conventional summary judgment and denied the motion for no-evidence summary judgment filed by Alberta and Nelson. Although not explicitly ruling on Bennett's motion for summary judgment, and not explicitly disposing of other defendants, Alberta and Minibus, Inc.,[2] in the original suit brought by Bennett, the court rendered judgment in favor of Nelson and stated that its ruling finally disposed of all parties and claims before it. Bennett filed a notice of appeal, as did Alberta and Nelson.

We review declaratory judgments under the same standards as other judgments and decrees. TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (Vernon 1997); *Lidawi*

2. Minibus, Inc., owned the bus in which Alberta was riding at the time of the accident.

*v. Progressive County Mut. Ins. Co.,* 112 S.W.3d 725, 730 (Tex.App.-Houston [14th Dist.] 2003, no pet.). We therefore look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *Lidawi,* 112 S.W.3d at 730. Accordingly, in reviewing the declaratory provisions in the present case, we look to the standards applicable to summary judgment.

When reviewing a ruling on a conventional motion for summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Limestone Prods. Distribution, Inc. v. McNamara,* 71 S.W.3d 308, 311 (Tex.2002); *Rhone-Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999). On appeal, the movant must show there is no material fact issue and that the movant is entitled to judgment as a matter of law. *Id.*

 In general, an order granting a summary judgment may be appealed, but an order denying a summary judgment may not. *Novak v. Stevens,* 596 S.W.2d 848, 849 (Tex.1980). However, an exception to this rule exists when both sides file motions for summary judgment and the court grants one and overrules the other. *Tobin v. Garcia,* 159 Tex. 58, 316 S.W.2d 396, 400 (1958). On appeal, the proper disposition is for the appellate court to render judgment for the party whose motion should have been granted. *Members Mut. Ins. Co. v. Hermann Hosp.,* 664 S.W.2d 325, 328 (Tex.1984); *McLemore v. Pac. Southwest Bank, FSB,* 872 S.W.2d 286, 289 (Tex.App.-Texarkana 1994, writ dism'd by agr.). Each party must clearly prove its right to judgment as a matter of law, and neither party may prevail simply because the other party failed to make such proof. *Bd. of Adjustment of City of Dallas v. Patel,* 887 S.W.2d 90, 92 (Tex. App.-Texarkana 1994, writ denied); *James*

*v. Hitchcock Indep. Sch. Dist.,* 742 S.W.2d 701, 704 (Tex.App.-Houston [1st Dist.] 1987, writ denied).

In its judgment, the court declared that there was no issue of material fact about Nelson's affirmative defense that there was a "pre-existing contract; pre-emptive contract" and found that Nelson was therefore entitled to summary judgment.

*The Conventional Summary Judgment*

 Bennett contends the court erred by rendering summary judgment against him. The court held that the pre-existing contract was enforceable. Bennett bases his contention on his position he provided summary judgment evidence Alberta was incompetent at the time she signed the contract with Nelson. The rights of incompetents are generally protected by rules that, in some circumstances, void transactions in which they are involved, and by the availability of guardianships. *Dubree v. Blackwell,* 67 S.W.3d 286, 289 (Tex.App.-Amarillo 2001, no pet.); RE-STATEMENT (SECOND) OF CONTRACTS § 15 (1981).

Bennett directs the Court to a letter attached to his motion for summary judgment, written by a treating physician. The car accident occurred July 17, and Alberta signed the contract with Nelson July 20. Errington Thompson, M.D., wrote the letter at bar, which was filed of record August 15, 2002. In that letter, he stated he examined Alberta July 25. He stated that she had a "closed head injury fro [sic] a motor vehicle crash on 7/17/02," that she "suffered an intracranial hemorrhage," that her "prognosis is good but her recovery will be slow. It is not clear if all of her mental capacity will return," and that "her thinking is quite muttled [sic]."

Although a temporary guardianship was granted, it terminated, and Alberta was not placed under a permanent guardianship.

Nelson produced an affidavit from Alberta, attached to his response to Bennett's motion for summary judgment. It was prepared after the temporary guardianship terminated. In the affidavit, Alberta reiterated that, at the time she signed the contract with Nelson, she had not been placed under a guardianship or deemed mentally incapacitated or incompetent by any court or medical professional, and she fully understood the effect of her actions and intended to be bound by them.

■ As pointed out by Nelson in his trial brief, Thompson's letter is merely that. It is a document offered for proof of the matter asserted and is, as Nelson pointed out, hearsay. *See* TEX.R. EVID. 801. Objected-to hearsay is not competent summary judgment evidence. TEX.R. CIV. P. 166a; *see Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex.1996); *Alford v. Thornburg,* 113 S.W.3d 575, 585 (Tex.App.-Texarkana 2003, no pet.).

Although Nelson objected both·in writing and orally at the hearing, the trial court did not rule on the objection. However, even assuming the trial court considered the letter, by its very terms it does not state Alberta was incompetent at the time she signed the contract with Nelson. The first date referenced by the letter is five days after she signed the contract, and even that does not reflect she was incompetent, only that her thinking was "muttled" [sic].

There is clear evidence by affidavit from the person at issue that she was neither incapacitated nor incompetent at the time she signed the contract. The evidence presented by Bennett does not contradict that evidence. Thus, the trial court did not err by granting summary judgment on that basis.

■ Bennett also contends the trial court erred by denying his motion for summary judgment on the basis that his own contingency fee contract was valid, while the other contract was not. There are several problems with this position. The summary judgment evidence contains a copy of the order, dated August 19, 2002, appointing Stanley (who signed the contingency fee contract with Bennett the next day) as temporary guardian of Alberta. TEX. PROB.CODE ANN. § 875 (Vernon Supp. 2004), which authorizes the creation of a temporary guardian, provides in subsection (b) that, "The person retains all rights and powers that are not specifically granted to the person's temporary guardian by court order." Subsection (g) provides that, "The court shall assign to the temporary guardian only those powers and duties that are necessary to protect the respondent against the imminent danger shown." TEX. PROB.CODE ANN. § 876 (Vernon 2003) goes on to provide that the order "shall be evidence of the temporary guardian's authority to act within the scope·of the powers and duties set forth in the order."

The order appointing Stanley as temporary guardian provides no such information. It does not specifically grant any right, or any power, or any duty, and does not specify any imminent danger from which the person need be protected. The order concludes as follows: "IT IS FURTHER ORDERED, that the Temporary Guardian shall have all the powers and duties as stated in the Texas Probate Code."

■ The Probate Code, for obvious reasons, intentionally sets out no powers or duties for a temporary guardian. It instead specifically and·repeatedly requires the order to designate the specific extent of the authority of the temporary guardian. *See Bandy v. First State Bank,* 835 S.W.2d 609 (Tex.1992). Where no authority is specifically designated, we cannot find that the order gave the temporary guardian the authority to enter into such a con-

tract. In similar situations, courts have acknowledged that acts taken by a temporary administrator, that are not specifically authorized by the order of appointment, are void. *See id.* at 615 (involving contracts entered by temporary administrators outside expressly authorized actions set out by court's order).

We conclude that Stanley, as temporary guardian, had no authority to contract on behalf of Alberta and that the contingency fee contract entered into between Bennett and Stanley cannot be enforced. Thus, the trial court did not err by denying Bennett's motion for summary judgment.

Because of our determinations above, we need not address the point of error brought by Alberta and Nelson complaining the trial court also erred by not granting their no-evidence motion for summary judgment.

We affirm the judgment of the trial court.